Filed 6/24/26  P. v. Nguyen CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NAM BA NGUYEN,<br><br>    Defendant and Appellant. | G065101<br><br>(Super. Ct. No. 24WF1882)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kevin Haskins, Andre Manssourian and Robert A. Knox, Judges. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Collette C. Cavalier and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A defendant has the right to represent himself at trial, provided he makes a knowing and voluntary waiver of the right to counsel. (*Faretta v. California* (1975) 422 U.S. 806, 807 (*Faretta*).) When reviewing courts evaluate the validity of a *Faretta* waiver, "we examine the record as a whole to see whether the defendant actually understood the consequences and import of the decision to waive counsel, and whether the waiver was freely made." (*People v. Mickel* (2016) 2 Cal.5th 181, 211–212 (*Mickel*).)

Defendant Nam Ba Nguyen was charged with one count of grand theft (taking jewelry from a store). Following a preliminary hearing, Nguyen asked the trial court to allow him to represent himself, and signed a *Faretta* waiver. After speaking with Nguyen, the court granted the motion. Following a four-day trial, a jury found Nguyen guilty as charged, and the court later granted Nguyen two years of formal probation.

Nguyen claims the trial court erred in granting his *Faretta* motion because the court did not advise him of his maximum punishment. We disagree. It appears Nguyen generally understood the consequences of his waiver, and it was freely made. (See *Mickel, supra,* 2 Cal.5th at pp. 211–212 ["There is no prescribed script or admonition that trial courts must use in warning a defendant of the disadvantages of self-representation"].)

Nguyen also contends the trial court erred because he did not have the mental competence to represent himself. We disagree. We find the court did not abuse its discretion because it appears Nguyen was able to carry out the basic tasks needed to present a defense. (See *People v. Johnson* (2012) 53 Cal.4th 519, 531 (*Johnson*) [in "determinations regarding self-representation, we must defer largely to the trial court's discretion"].)

Thus, we affirm the judgment.

2

# I.

## FACTS AND PROCEDURAL BACKGROUND

On July 7, 2024, Nguyen was seen on a surveillance video taking merchandise from the jewelry department in a Macy's store. A loss prevention employee saw Nguyen taking various jewelry items out of their boxes, and then Nguyen was seen putting jewelry into his pocket and a bag.

Nguyen walked out of the store and was approached by two Macy's employees. Nguyen initially denied taking anything, and then he claimed that he had paid for the items. The employees escorted Nguyen back inside the store and found jewelry items in his pockets, in a bag, and in a backpack. The employees matched the barcodes on the merchandise with the barcodes on the empty boxes. The employees later determined that the total value of the stolen jewelry was $1,874.00.

Police arrived and watched the store's video showing Nguyen taking various items of merchandise from the jewelry department. Police placed Nguyen in custody, and found additional jewelry in his crotch area, where he had "a double set of underwear and he had a lot more jewelry in between the two sets." Nguyen eventually admitted to police that he took 10 to 13 pieces of jewelry.

*Court Proceedings*

On July 9, 2024, the People filed a felony complaint charging Nguyen with grand theft. The complaint further alleged two strike priors, as well as aggravating factors. The trial court appointed counsel, but the arraignment was continued because Nguyen refused to leave his jail cell.

On July 10, Nguyen next appeared in court. Nguyen's appointed counsel requested a mental health evaluation. (See Pen. Code, § 4011.6.) The

3

court granted the request. Counsel told the court: "We are not prepared to declare a doubt at this time." The arraignment was again continued.

On July 12, the mental health evaluation was filed, which found that Nguyen did not present with any major mental illnesses or disorders, was not a danger to himself or others, was not gravely disabled, and was not currently being prescribed any psychotropic medications. Nguyen was arraigned on the felony complaint.

On July 26, there was a preliminary hearing, and Nguyen was held to answer as to count one of the complaint.

On August 2, the People filed an information, which repeated the same charge and allegations in the complaint.

On August 8, Nguyen requested a *Marsden* hearing to relieve his appointed counsel. (See *People v. Marsden* (1970) 2 Cal.3d 118.)

On August 12, the trial court conducted the *Marsden* hearing. Nguyen told the court (Judge Robert A. Knox) that he thought someone was using his name and identity. Counsel told the court that he "didn't think that was a viable theory to say that the person on the [Macy's] video was not Mr. Nguyen." Nguyen also asked to represent himself. The court said, "As far as your request for a different attorney, that is denied." The court said, "If you want to represent yourself, you have that right." The court told Nguyen that he would need to fill out a *Faretta* waiver form in a different courtroom.

Later that day, a different trial court judge in the calendar court conducted the *Faretta* hearing. The court (Judge Andre Manssourian) granted Nguyen's request to represent himself (the hearing will be covered in greater detail in the discussion section of this opinion).

From August 21, through October 7, Nguyen filed numerous motions. Examples include: a motion for a speedy trial, a motion to dismiss

4

the charges, a motion to request access to the court-appointed investigator, various discovery motions, and a motion to disqualify Judge Manssourian.

On October 7, a four-day jury trial began (Judge Kevin Haskins presided). During the defense portion of the trial, Nguyen called his appointed private investigator as a witness. The investigator said that two SKU (Stock Keeping Unit) numbers from Macy's theft report did not match any SKU numbers on their website. Nguyen also testified on his own behalf. Nguyen admitted to taking jewelry items from Macy's without paying for them, but he said that the amount of the loss ($1,874.00) was not supported by the SKU numbers recorded by the store in their theft report. Nguyen estimated that he stole $700.00 worth of items. Nguyen said that most of the jewelry in his underwear was not stolen from Macy's.

On October 14, the jury found Nguyen guilty of grand theft, and found the allegations and aggravating circumstances true. After the reading of the verdicts, Nguyen requested counsel for the sentencing hearing, and the trial court granted the request.

On January 13, 2025, the trial court struck the two strike priors (felony assaults), primarily due to the fact that they were both considerably remote in time (2008). The court suspended imposition of the sentence, granted Nguyen two years of formal probation with 364 days in county jail, and awarded Nguyen 382 days of custody credits.

II.

DISCUSSION

Nguyen claims the trial court erred by obtaining an inadequate waiver of his right to counsel, and abused its discretion by not revoking his waiver because he was mentally incompetent to represent himself.

5

*A. The Right of Self-Representation*

Nguyen claims: "The trial court failed to obtain a valid waiver . . . of his right to counsel because it did not advise [him] of the possible penalties associated with the charged crime." We disagree.

An appellate court reviews de novo whether a defendant validly waived his or her right to the assistance of counsel. (*People v. Orosco* (2022) 82 Cal.App.5th 348, 358.) The reviewing court independently examines the entire record to determine whether the defendant made a knowing and intelligent waiver. (*People v. Burgener* (2009) 46 Cal.4th 231, 240–241.)

In this part of the discussion, we will: 1) review relevant legal principles; 2) summarize the trial court proceedings; and 3) analyze the legal principles as applied to the facts in this case.

*1. Relevant Legal Principles*

The United States Constitution "secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." (*Iowa v. Tovar* (2004) 541 U.S. 77, 87 (*Tovar*).) Criminal defendants also have the right to waive counsel and represent themselves. (*Faretta, supra,* 422 U.S. at p. 807.) "While the Constitution 'does not force a lawyer upon a defendant,' [citation], it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent . . . ." (*Tovar*, at pp. 87–88.)

In evaluating the validity of a waiver, "we examine the record as a whole to see whether the defendant actually understood the consequences and import of the decision to waive counsel, and whether the waiver was freely made. [Citation.] There is no prescribed script or admonition that trial courts must use in warning a defendant of the disadvantages of self-representation." (*Mickel, supra,* 2 Cal.5th at pp. 211–212.)

"The information a defendant must possess in order to make an intelligent election, . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." (*Tovar*, *supra*, 541 U.S. at p. 88.) The United States Supreme Court has stated that the "[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorous[ly]' conveyed." (*Id.* at p. 89.) But it is also true that "[c]ountless disadvantages might result from a waiver of the right to counsel," and "the trial court need only inform the defendant in general terms of the most common disadvantages." (*People v. Frederickson* (2020) 8 Cal.5th 963, 1003.)

### 2. *Trial Court Proceedings*

On August 12, 2024, during the *Marsden* hearing in which Nguyen sought to replace his appointed counsel, Nguyen asked the trial court, "Your Honor, I request to represent myself." The court (Judge Knox) advised Nguyen: "In order for you to do that, Mr. Nguyen, you need to fill out a waiver form, what's called a *Faretta* waiver." After denying the *Marsden* motion, the court told Nguyen, "If you want to represent yourself, you have that right. You can fill out that form back in [the calendar court]."

When the matter returned to the calendar court (Judge Manssourian), Nguyen had completed the *Faretta* wavier, which is a two-page, preprinted form that appears to be a standard form that is used throughout all of Orange County's criminal courtrooms. The form includes the following language on page one:

"You have stated to the court that you do not wish to be represented by an attorney even though one would be provided to you at no expense if you cannot afford one and that you wish to represent yourself. In

7

making this decision to be your own attorney have you considered:

"1. It is almost always unwise to represent yourself and in so doing you may conduct a defense which may aid the prosecutor in convicting you of the charge(s)?

"2. You are not entitled to any special privileges or treatment from the judge. The judge will require you to follow all the technical rules of law procedure and evidence in the defense of your case and in the presentation of your defense. The judge will not aid you in your efforts to defend yourself.

"3. The prosecutor will be an experienced professional attorney who will not treat you leniently or in any special way even though you do not have the same skills or experience the prosecutor has. It will not likely be a fair contest since the prosecutor will have an advantage by reason of their skill and experience.

"4. If you are in custody you will receive no more library privileges than those available to other persons representing themselves. You will receive no extra time for preparation. You will have no staff of investigators at your beck and call.

"5. If you elect to represent yourself you will not be successful in any appeal based upon the quality of your representation. In other words an allegation that you were denied effective assistance of counsel that is you were incompetent as a trial attorney will not result in a new trial with competent counsel.

"6. If you change your mind during the trial you may not be permitted to obtain a postponement of the case while you obtain an attorney.

"7. Your right to represent yourself may be ended, an attorney appointed for you, and you may be excluded from the courtroom if you

misbehave during this case or seriously disrupt the trial."

On each of these advisements, Nguyen placed his initials.

The second page of the *Faretta* waiver form stated: "Answer the following questions:

"8. Have you ever represented yourself before in a jury trial?" Nguyen checked the box labeled "Yes" and initialed the form.

"9. You are charged with [blank.] Have you considered possible defenses?" Nguyen filled in the blank with "P.C. 487," did not check either the "Yes" or "No" box, and initialed the form.

"10. Do you know the maximum penalty in the event you are convicted?" Nguyen checked the box labeled "Yes," and initialed the form.

"11. Indicate the number of years of formal education you have had." Nguyen wrote in "12" in the high school option on the form.

"12. Is English your first language . . . If no, what is?" Nguyen checked the box "No," and wrote in, "Vietnamese."

"13. Have you been treated for any emotional/mental illnesses?" Nguyen checked the box "Yes," and wrote in "depress/PTSD."

"14. Have you had any difficulties reading and understanding this form?" Nguyen checked the box "No."

"15. Please explain your views about the form: [blank]." Nguyen wrote: "Form explain how represented yourself is danger [[*sic*]]."

"16. Please explain briefly why you wish to represent yourself: [blank]." Nguyen wrote: "I am the only person whom [[*sic*]]understand my case better than anyone."

"Do you now wish the court to permit you to represent yourself as your own attorney" Nguyen checked the box "Yes," and dated and signed the preprinted *Faretta* waiver form.

9

At the hearing on the *Faretta* motion, the court (Judge Manssourian) noted that Nguyen's earlier *Marsden* motion had been denied in a different courtroom (Judge Knox). The court asked Nguyen, "What is your request of the Court right now?" Nguyen responded, "If I could represent myself. And, yes, I request to represent myself." Nguyen asked that if the court were to grant his request that it would also "provide me an investigator so I can review . . . the video."

The court asked Nguyen, "So you've written on the form that English is not your first language and that Vietnamese is your first language. Do you need an interpreter?" Nguyen responded, "No, Your Honor." After indicating its understanding, the court then said, "I want to let you know a couple of things." Nguyen responded, "Yes, sir."

The court explained to Nguyen that if it granted his request to represent himself, then any further requests of the court would need to be in writing. Nguyen responded, "Yes, Your Honor." The court explained that the process is a little bit "complicated," and that "it's inconvenient for you."

The court also explained to Nguyen that he would "have to wait for an investigator -- if I even give you an investigator -- you have to wait for the investigator to come see you. It's very inconvenient. I just want to prepare you for that." The court also explained that if Nguyen later changed his mind and asked for an attorney that he "should not assume that I'll give you the opportunity to get an attorney again." Although the court said that if it were to reappoint an attorney, the court would "speed dial" the attorney currently appointed for Nguyen.

The court asked Nguyen, "Do you understand?" Nguyen responded, "Yes, sir." The court then granted the *Faretta* motion, relieved appointed counsel, ordered a "pro per packet" for Nguyen, and set further

dates after Nguyen told the court, "I don't want to waive time." Nguyen requested discovery, and his now relieved appointed counsel said, "I will copy everything in the files that I currently have and mail that to Mr. Nguyen."

About two months later, during extensive pretrial motions, the trial court (Judge Haskins) had a dialogue with Nguyen about his continued self-representation. The court told Nguyen, in part:

"[Y]ou do have the right to be represented by an attorney during the trial. And sometimes when people feel very strongly about their cases, they feel that well, I'm the person it affects the most, so I'm best situated to basically act as the lawyer on it. But my experience has been that that's not always the case. Kind of the analogy I draw is that, like, if -- when I was leaving the courthouse today I tripped on the way to my car and I broke my wrist, nobody would have more of an interest in making sure that my wrist was properly treated and healed properly than me because I'm the guy who would have to live with it if it was permanently injured; right? But the fact that I'm the person who has the most to lose if the wrist isn't treated properly, doesn't mean I'm the best guy to treat the wrist.

"So what I kind of analogize this to is I could go on the Internet or go to the library and look up how to set a broken wrist; right? And I could probably figure out how to do it, and maybe do it myself, but I'd probably do a very bad job at it, and as a consequence of that, my wrist might not ever heal properly and I would have to live with that for the rest of my life. . . .

"So when people are representing themselves on criminal cases, I'm always worried that although they're the [person] that's most strongly affected by the outcome, they're not necessarily the best person to do the lawyering. [¶] So the reason I bring all this up is that . . . you seem like a nice person to me. You seem pretty intelligent. You're polite. But I'm worried

that when you represent yourself on a felony case, that you really put yourself at a disadvantage and that you would probably be better served by having a professional attorney appointed to represent you . . . . It doesn't mean I don't like you or I don't think you're smart or anything like that, it's just that I would tell anybody in your situation that they're probably going to be at a disadvantage if they represent themselves . . . because, you know, you're not a lawyer so you're not necessarily conversant with all the rules of evidence and procedure and so forth."

Thereafter, the trial court gave Nguyen the opportunity to reconsider his decision regarding self-representation, and have the court again appoint an attorney, but Nguyen declined the court's entreaty.

### 3. Analysis and Application

Even though a criminal defendant may be found to be "unlikely to be effective in conducting her own defense, *Faretta* nevertheless requires she be allowed to represent herself at trial." (*People v. Best* (2020) 49 Cal.App.5th 747, 752 (*Best*).) In *Best*, defendant was charged with burglary and related charges. (*Ibid*.) After being found competent to stand trial, defendant asked to represent herself. Defendant read and initialed a *Faretta* waiver form, and the trial court conducted an inquiry. (*Id*. at pp. 752–755.) The trial court ultimately denied the motion, finding that that defendant failed to grasp certain legal concepts. (*Id*. at p. 755.) The Court of Appeal disagreed and reversed defendant's convictions. (*Id*. at p. 752.)

In *Best*, after a de novo review of the entire record, the appellate court found defendant's timely "invocation of the right to self-representation was unambiguous, and the record indicates it was knowing and voluntary. She filled out the *Faretta* waiver form and, at the hearing on the *Faretta*

motion, said she understood the rights she was giving up and the risks and disadvantages of representing herself." (*Best, supra,* 49 Cal.App.5th at p. 760.) The court emphasized that the *Faretta* procedure "'is not . . . a test the defendant must pass in order to achieve self-representation.' [Citation.] Its advisements 'serve to warn the defendant of the complexities of the task about to be undertaken. They may not be used to disqualify individuals who do not understand each nuance of the complex subject matter presented.'" (*Ibid.*) "In this case, as in . . . *Faretta,* the defendant's decision to self-represent was almost certainly unwise. But even if self-representation results in an unfair trial, 'defendant's choice "must be honored."'" (*Id.* at p. 761.)

Here, Nguyen unambiguously invoked his right to represent himself approximately two months in advance of the anticipated trial date after being represented by counsel. Nguyen read and initialed the preprinted *Faretta* advisement form, which thoroughly covered the dangers of self-representation, and the court then conducted a brief inquiry to confirm that Nguyen generally understood the downsides of his choice. Although the court could have perhaps conducted a more extensive inquiry during the *Faretta* hearing in the calendar court, this was a fairly straightforward criminal matter involving a theft. Nguyen also appeared to be quite adamant about representing himself. Indeed, on the verge of the jury trial, a second judge colorfully reiterated to Nguyen the dangers of self-representation, and allowed Nguyen the opportunity to change his mind, but he did not do so.

In sum, as the appellate court found in *Best*, we similarly find that although it was undoubtedly unwise, it appears Nguyen specifically understood the right he was giving up (the right to an attorney), and he also appears to have generally understood the risks and disadvantages of self-representation. Thus, we find no error on the part of the trial court.

Nguyen argues that this appellate court cannot legally conclude that his *Faretta* waiver was knowing and intelligent because the trial court did not advise him of the maximum penalty he faced. We disagree.

As Nguyen acknowledges, California appellate courts are somewhat split on whether a defendant must be informed of the maximum penalty when waiving the right to counsel and choosing self-representation.

There is one appellate court that has affirmatively held that there is such a requirement. (See *People v. Jackio* (2015) 236 Cal.App.4th 445, 454–455 [a trial court is required to advise a defendant "desiring to represent himself at trial of the maximum punishment that could be imposed if defendant is found guilty of the crimes, with enhancements, alleged at the time the defendant moves to represent himself"].)

However, other appellate courts have held otherwise. (See *People v. Bush* (2017) 7 Cal.App.5th 457, 473 [waiver was valid even though court failed to advise defendant of all possible consequences, including substantial monetary fines]; *People v. Ruffin* (2017) 12 Cal.App.5th 536, 544 [declining to enter into debate as to whether trial court is required to advise of possible penal consequences because "even if such an advisement is not mandatory, its total absence is certainly a factor to consider in determining whether the defendant's waiver was knowingly made"]; *People v. Fox* (2014) 224 Cal.App.4th 424, 434–438 [trial court's incorrect statement regarding future three strikes consequence of conviction did not vitiate defendant's waiver].)

Significantly, our Supreme Court has repeatedly held— and has recently reiterated—that "'we examine the record as a whole to see whether the defendant actually understood the consequences and import of the decision to waive counsel, and whether the waiver was freely made. [Citation.] There is *no prescribed script or admonition* that trial courts must

use in warning a defendant of the disadvantages of self-representation.'" (*People v. Bankston* (June 1, 2026, S044739) __ Cal.5th __, italics added; *Mickel*, *supra*, 2 Cal.5th at pp. 211–212 [same]; *People v. Burgener, supra,* 46 Cal.4th at pp. 240–241 ["'no particular form of warning is required'"].)

In any event, Nguyen was asked in the *Faretta* advisement form: "Do you know the maximum penalty in the event you are convicted?" Nguyen checked the box labeled "Yes," and initialed the form. Up to this point, Nguyen had been represented by appointed counsel, who represented Nguyen before, during, and after a preliminary hearing. Therefore, we have no reason to disbelieve Nguyen's representation to the trial court that he did, in fact, have knowledge of the maximum punishment he was facing.

Thus, to conclude and reiterate on Nguyen's claimed *Faretta* violation by the trial court, we find that he understood the rights he was giving up, as well as the risks and disadvantages of self-representation.

## B. Mental Competence for Self-Representation

In this appeal, Nguyen does not argue that he was incompetent to stand trial, but he does argue that the trial court abused its discretion because he was mentally incompetent to represent himself. We disagree.

A defendant in a criminal case has the right to represent himself. (*Faretta*, *supra*, 422 U.S. at pp. 806–807.) A defendant also has the right not to be to subject to a criminal trial while he is mentally incompetent. Mental competence means the defendant has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and also has "'a rational as well as a factual understanding of the proceedings against him.'" (*Dusky v. United States* (1960) 362 U.S. 402.)

However, some defendants suffer from "a mental condition that

falls in a gray area between [the] minimal constitutional requirement that measures a defendant's ability to stand trial and a somewhat higher standard that measures mental fitness for" self-representation. (*Indiana v. Edwards* (2008) 554 U.S. 164, 172 (*Edwards*).) The United States Supreme Court held that states may, but need not, deny self-representation to "gray-area defendants"—those defendants who are competent to stand trial but lack the mental health or capacity to represent themselves. (*Id.* at p. 174.)

The California Supreme Court has held that "[c]onsistent with long-established California law, . . . trial courts may deny self-representation in those cases where *Edwards* permits such denial." (*Johnson*, *supra*, 53 Cal.4th at p. 528.) Under *Edwards*, competence to represent oneself at trial is best described as "the ability 'to carry out the basic tasks needed to present [one's] own defense without the help of counsel.'" (*Johnson*, at p. 530.) The basic tasks needed to present a defense include the "organization of defense, making motions, arguing points of law, participating in voir dire, questioning witnesses, and addressing the court and jury." (*Edwards*, *supra*, 554 U.S. at p. 176, italics omitted.)

"As with other determinations regarding self-representation, we must defer largely to the trial court's discretion. [Citations.] The trial court's determination regarding a defendant's competence must be upheld if supported by substantial evidence." (*Johnson*, *supra*, 53 Cal.4th at p. 531.)

In this case, after appointed counsel was relieved, Nguyen filed numerous motions in the calendar courtroom. In some of those motions, Nguyen made nonsensical claims about being part of a presidential task force, the misuse of DNA by the government, the need for records to demonstrate that a third person was impersonating him, and related government misconduct.

However, in one of the motions filed by Nguyen he asked the trial court to appoint a new investigator and the court ultimately granted that request. At that hearing, Nguyen again continued to make various nonsensical claims, including a claim that he would "ask the F.B.I. to conduct an investigation through my eye."

At the conclusion of the hearing, the trial court said, "All right. So the very last thing I wanted to address, Mr. Nguyen, is I am thinking -- you saw that the jail did a mental evaluation, a 4011?" Nguyen responded, "Yes, sir." The court said, "I am thinking of asking them to do that again to make sure that you are okay." Nguyen responded, "Yes, you could. You could." The court then ordered a second mental health evaluation. (See Pen. Code, § 4011.6.)[1]

When the matter was assigned to a trial department, Nguyen participated in the pretrial motions, including cross-examining the police officer who had interviewed him at the Macy's store after issuing a *Miranda* warning. Nguyen participated in voir dire, reminding the jurors that the case against him had to be proven beyond a reasonable doubt. Nguyen made an opening statement in which he admitted to taking some merchandise from Macy's, but he disputed the accuracy of the store's theft report and the amount of the loss. Nguyen cross-examined the three witnesses called by the People: two Macy's employees and the arresting officer. Nguyen called as his own witness his appointed investigator who testified about the discrepancies regarding the barcode numbers on some of the stolen jewelry items.

During Nguyen's own testimony, he primarily talked about his

___

[1] The results of the second mental health evaluation are not included in the record, but the trial court never declared a doubt as to Nguyen's mental competency to stand trial or to represent himself.

prior convictions. Nguyen also discussed his irrational claims that someone had installed a device that lets them see through his eyes, and that someone else had been responsible for the prior convictions. The court repeatedly urged Nguyen to focus on the events at Macy's. For instance, the court said, "I know it may be difficult, but what I'd like you to do is try to focus on the day in question, so the day of the events that were testified to at Macy's. So if you'd like, you can testify about that if you would like."[2]

Nguyen eventually discussed how he had modified his boxer underwear to include a double layer "so I put a lot of stuff inside the boxer." Nguyen explained: "My point is that in order to put anything in here, it took a lot of a time to put all the stuff in here," but no witness saw him "put anything in there." Nguyen also explained that when he entered Macy's he had a lot of jewelry wrapped up in a shirt to avoid mixing it with other jewelry. During his testimony, Nguyen asked if the black boxer shorts could be marked as an exhibit, and the court granted his request. Nguyen stated, "I don't believe that on all the stuff that I take was total up to $700 [[*sic*]]."[3]

Nguyen presented a closing argument. At points, Nguyen repeated his irrational claims about having something installed in his eyes and acting as an agent for the government, but the trial court directed him to discuss the matters relevant to the jury. Nguyen essentially argued the same points he made in his direct testimony: that he took jewelry from Macy's, but he denied the purported value of merchandise taken.

---

[2] We commend the trial court for its patience and deportment over the entirety of the jury trial.

[3] The cutoff point between a felony theft and a misdemeanor theft is currently $950. (Pen. Code, § 487, subd. (a).)

18

Nguyen participated in the discussion of jury instructions. For instance, Nguyen specifically objected to CALCRIM No. 362 (Consciousness of Guilt: False Statements), which informs jurors that they could consider Nguyen's prior false statements during its deliberations when deciding on his guilt. However, the court overruled Nguyen's objection. After the jury returned its verdict, Nguyen requested and was appointed counsel for the later sentencing hearing.

"Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations." (*People v. Rogers* (2006) 39 Cal.4th 826, 847.) However, the "evidence must bear on the defendant's competency to stand trial, rather than simply establish the existence of a mental illness that could conceivably affect his [or her] ability to understand the proceedings or assist counsel." (*People v. Ghobrial* (2018) 5 Cal.5th 250, 270.) Evidence of mental illness alone is insufficient to raise a doubt as to competency. (*Rogers*, at p. 849.) A trial court is *permitted* to deny self-representation to a mentally ill, but otherwise competent defendant, but a court is not *required* to do so. (*Johnson, supra,* 53 Cal.4th at p. 530.)

Here, Nguyen undoubtedly evidenced mental health issues at various times both before and during the jury trial. However, the record also reflects that Nguyen possessed the capability to undertake the basic tasks necessary to represent himself in what was essentially a straightforward felony shoplifting case. At all times Nguyen was cooperative and respectful during the courtroom proceedings. Nguyen filed numerous motions, some of which were nonsensical, but some of Nguyen's motions made valid legal points, and ultimately were granted by the court. During the jury trial, Nguyen engaged in voir dire, gave opening and closing statements, and cross-

examined the People's percipient witnesses. Nguyen further called his own witness to support his defense, and he testified on his own behalf.

The trial court was in the best position and had the benefit of observing and interacting with Nguyen over the course of several days. The court also had the additional benefit of gauging the reactions of the jurors.

In sum, it appears Nguyen was capable of performing the basic tasks of self-representation; therefore, we reject Nguyen's claim on appeal that the court abused its discretion by not revoking its decision to allow Nguyen to continue to represent himself. (See *Johnson, supra,* 53 Cal.4th at p. 531 ["As with other determinations regarding self-representation, we must defer largely to the trial court's discretion"].)

## III.
## DISPOSITION

The judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

SCOTT, J.

SERVINO, J.

20